UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                            Case No. 17-20022

v.                                    Honorable Nancy G. Edmunds

ANTOINE WOODS (D-2), and
AUSTIN WOODS (D-3),

       Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR
JUDGMENTS OF ACQUITTAL AND/OR A NEW TRIAL [232, 233, 236, 242, 281]**

This matter comes before the Court on Defendants Antoine Woods' and Austin

Woods' motions for a judgment of acquittal and/or a new trial pursuant to Federal Rules

of Criminal Procedure 29 and 33.  (Dkts. 232, 233.)  Defendant Antoine Woods filed an

amended motion and a supplemental brief, (dkts. 236, 281), and Defendant Austin

Woods filed two additional briefs supplementing his motion, (dkts. 242, 249).  The

government opposes these motions.  (Dkts. 247, 283.)  The Court finds that the

decision process would not be significantly aided by oral argument.  Therefore, pursuant

to Eastern District of Michigan Local Rule 7.1(f)(2), Defendants' motions will be decided

on the briefs and without oral argument.  For the reasons stated below, the Court

DENIES Defendants' motions.

## I.    Background

In August of 2018, Defendants Antoine Woods and Austin Woods were charged

in a second superseding indictment with various racketeering and firearms offenses.

(Dkt. 126.)  Defendant Antoine Woods was also charged with two obstruction of justice

offenses. The racketeering and firearms charges stem from a murder conspiracy and four separate shootings in late 2015 and early 2016 allegedly committed by members of the Detroit street gang, "Head Niggas in Charge" or "HNIC," aimed at a rival and members of his family. The obstruction of justice charges were a result of Antoine Woods' efforts to influence and/or prevent the testimony of a fellow HNIC member.

On June 21, 2019, following a lengthy jury trial that began on May 14, 2019, the jury found Defendant Antoine Woods guilty of 9 of the 15 counts in which he was charged and Defendant Austin Woods guilty of 2 of the 5 counts in which he was charged. (Dkts. 212, 214.) More specifically, both Defendants Antoine and Austin Woods were found guilty of conspiring to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5). Defendant Antoine Woods was found guilty of all the counts related to two of the four charged shootings: a December 6, 2015 shooting at the King of Diamonds strip club and a December 20, 2015 shooting at the residence at 557 Alger Street. These counts include attempted murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) and Mich. Comp. Laws § 750.83; assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3) and Mich. Comp. Laws § 750.82; and using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Defendant Austin Woods was found guilty of the § 924(c) charge related to the December 20, 2015 shooting. Finally, Defendant Antoine Woods was found guilty of both obstruction of justice charges, including conspiracy to commit obstruction of justice in violation of 18 U.S.C. §§ 371, 1503 and obstruction of justice in violation of 18 U.S.C. § 1503.

The chart below lists the jury's verdicts:

| Count | Charge | Defendant(s) | Verdict |
|---|---|---|---|
| One | Conspiracy to Commit Murder in Aid of Racketeering | Antoine Woods, Austin Woods | Guilty |
| Three | Attempted Murder in Aid of Racketeering (Dec. 6, 2015 shooting) | Antoine Woods | Guilty |
| Four | Assault with a Dangerous Weapon in Aid of Racketeering (Dec. 6, 2015 shooting) | Antoine Woods | Guilty |
| Five | Use and Carry and Discharge of a Firearm During and in Relation to a Crime of Violence (Dec. 6, 2015 shooting) | Antoine Woods | Guilty |
| | | Austin Woods | Not Guilty |
| Six | Attempted Murder in Aid of Racketeering (Dec. 7, 2015 shooting) | Antoine Woods | Not Guilty |
| Seven | Assault with a Dangerous Weapon in Aid of Racketeering (Dec. 7, 2015 shooting) | Antoine Woods | Not Guilty |
| Eight | Use and Carry and Discharge of a Firearm During and in Relation to a Crime of Violence (Dec. 7, 2015 shooting) | Antoine Woods, Austin Woods | Not Guilty |
| Nine | Attempted Murder in Aid of Racketeering (Dec. 20, 2015 shooting) | Antoine Woods | Guilty |
| Ten | Assault with a Dangerous Weapon in Aid of Racketeering (Dec. 20, 2015 shooting) | Antoine Woods | Guilty |
| Eleven | Use and Carry and Discharge of a Firearm in Relation to a Crime of Violence (Dec. 20, 2015 shooting) | Antoine Woods, Austin Woods | Guilty |
| Twelve | Attempted Murder in Aid of Racketeering (Mar. 9, 2016 shooting) | Antoine Woods | Not Guilty |
| Thirteen | Assault with a Dangerous Weapon in Aid of Racketeering (Mar. 9, 2016 shooting) | Antoine Woods | Not Guilty |
| Fourteen | Use and Carry and Discharge of a Firearm During and in Relation to a Crime of Violence (Mar. 9, 2016 shooting) | Antoine Woods, Austin Woods | Not Guilty |
| Sixteen | Conspiracy to Commit Obstruction of Justice | Antoine Woods | Guilty |
| Seventeen | Obstruction of Justice | Antoine Woods | Guilty |

## II.     Analysis

At the end of the government's case-in-chief, Defendant Antoine Woods moved for acquittal on the three counts related to the December 20, 2015 shooting (Counts 9, 10, 11), and Defendant Austin Woods moved for acquittal on the four § 924(c) counts he was charged with (Counts 5, 8, 11, 14).  The Court denied the motions.  (*See* dkt. 227, PgID 3314, 3318.)

Defendant Antoine Woods now seeks acquittal or a new trial on the counts related to both the December 6, 2015 and December 20, 2015 shootings (Counts 3, 4, 5, 9, 10, 11), arguing the evidence at trial was not sufficient to sustain these convictions and that the convictions go against the weight of the evidence.  He also seeks acquittal on the two obstruction of justice counts (Counts 16, 17).[1]  Defendant Austin Woods seeks acquittal or a new trial on the § 924(c) charge he was convicted of (Count 11).  He argues that this conviction should be set aside because it was based upon a *Pinkerton* theory of liability or, alternatively, that that the evidence was insufficient to sustain this conviction.  Defendants also take issue with certain rulings made by the Court during trial and argue that they warrant a new trial.

The Court begins its analysis with the applicable standards of review, and then addresses Defendants' individual arguments.

### A.     Standard of Review

---

[1] Since the conclusion of the trial in this case, Defendant Antoine Woods has been appointed new counsel twice—the first upon his motion and the second upon his counsel's motion to withdraw.  (*See* dkts. 259, 272.)  Through a supplemental brief filed by his newest counsel approximately seven months after the jury returned its verdict, Antoine Woods seeks acquittal on the obstruction of justice counts for the first time and makes a number of new arguments.  (*See* dkt. 281.)  Defendant Austin Woods has filed a notice of joinder to this brief to the extent the issues raised apply to him.  (Dkt. 286.)

### 1. Rule 29 Motions for Acquittal

Federal Rule of Criminal Procedure 29 allows the Court to "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). "In deciding whether the evidence is sufficient to withstand a motion for an acquittal, and support a conviction, the court views all evidence in the light most favorable to the prosecution and determines whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). The court does not independently weigh the evidence or assess the credibility of trial witnesses. *Id.* It must, however, "consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Fusero*, 106 F. Supp. 2d 921, 927 (E.D. Mich. 2000) (internal quotation marks and citation omitted).

### 2. Rule 33 Motions for a New Trial

Federal Rule of Criminal Procedure 33 permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The rule does not define interest of justice and the courts have had little success in trying to generalize its meaning." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (internal quotation marks and citation omitted). It is, however, "widely agreed that Rule 33's interest of justice standard allows the grant of a new trial where substantial legal error has occurred." *Id.* This includes "reversible error or violation of the defendant's substantial rights." *Id.* at 374. And when "deciding Rule 33 motions based on the manifest weight of the evidence, . . . a district judge may sit as a thirteenth juror and consider the evidence to ensure that there is no miscarriage of justice." *Id.* at 373 n.9

(internal quotation marks and citation omitted). "Generally, such motions are granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Montgomery*, 358 F. App'x 622, 628 (6th Cir. 2009) (internal quotation marks and citations omitted).

The decision to grant a Rule 33 motion for a new trial lies within the Court's sound discretion. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). "The defendant bears the burden of proving that a new trial should be granted." *Id.*

### B. Sufficient Evidence for Guilty Verdicts as to Defendant Antoine Woods on Counts 3, 4, 5, 9, 10, 11

For each shooting, Defendant Antoine Woods was convicted of two violent crimes in aid of racketeering ("VICAR") offenses—attempted murder in aid of racketeering and assault with a dangerous weapon in aid of racketeering, as well as using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of § 924(c). He challenges the sufficiency of the evidence supporting all six of these convictions. He does not dispute that the shootings took place, but rather argues that there was insufficient evidence that he was the offender and that the government did not prove certain elements of the crimes.[2]

### 1. Sufficient Evidence on Common VICAR Elements

For each VICAR offense, the government was required to prove that 1) an enterprise existed, 2) the enterprise was engaged in racketeering activity, 3) the enterprise was engaged in, or its activities affected, interstate commerce, 4) the

---

[2] To the extent Defendant Antoine Woods relies on the Supreme Court case of *United States v. Davis*, 139 S. Ct. 2319 (2019), to attack his § 924(c) convictions, this issue will be discussed below along with Defendant Austin Woods' arguments to the same effect.

defendant had a position in the enterprise, and 5) the defendant's general purpose in committing the violent crime was to maintain or increase his position in the enterprise. *See United States v. Odum*, 878 F.3d 508, 517 (6th Cir. 2017), *vacated on other grounds sub nom. Frazier v. United States*, 139 S. Ct. 319 (2018) (internal citations omitted). Defendant Antoine Woods takes issue with the sufficiency of the evidence supporting the third and fifth of these elements. The Court finds there was sufficient evidence supporting all of the common VICAR elements.

To establish the existence of an enterprise, the government was required to prove "a purpose, relationships among those associated with the racketeering enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Here, the government introduced evidence in the form of social media posts by Antoine Woods and other HNIC members reflecting the members associating with one another, identifying themselves as HNIC members, identifying HNIC as a gang, bragging about their activities, and protecting their territory. The government also introduced evidence of HNIC tattoos on Defendant Antoine Woods' body and other members' bodies. (Gov. Exhs. 2.1-2.4.) And, finally, co-conspirator and fellow HNIC member Donovann Rhymes testified about HNIC's existence, criminal activities, and its purposes, including protecting the gang's reputation. (Dkt. 220, PgID 2404-11.) This evidence was sufficient to establish that HNIC was an enterprise. This same evidence also established Antoine Woods' position within that enterprise.

There was also sufficient evidence establishing that the enterprise was engaged in racketeering activity, specifically drug trafficking. Rhymes testified as to HNIC's drug

trafficking activities, and social media posts and digital media further supported his testimony.  The government also introduced evidence of drug trafficking from four homes at which HNIC members were present.  (*See* Dkt. 223, PgID 2899-2913; dkt. 230, PgID 3380-84.)  And while Defendant Antoine Woods argues that the government failed to show that the HNIC enterprise engaged in activities that affected interstate commerce, drug trafficking is an economic activity that satisfies the interstate commerce prong.  *See Taylor v. United States*, 136 S. Ct. 2074, 2080-81 (2016) (illegal sale of controlled substances is an economic activity that affects interstate commerce); *see also Odum*, 878 F.3d at 517 ("if an enterprise engages in economic activity, then even a *de minimis* connection to interstate commerce is sufficient to meet the interstate prong of VICAR").

With regard to the final common VICAR element, Defendant Antoine Woods argues that Rhymes committed the violent crimes at issue for financial reasons and due to a personal vendetta he had against the target.  This argument assumes that the jury found that Woods aided and abetted Rhymes in the commission of these crimes.  However, the government charged Woods as the principal and aiding and abetting was only an alternative theory.  Nonetheless, there was sufficient evidence to establish that Defendant's general purpose in committing (or aiding and abetting) the VICAR offenses was to maintain or increase his position in the enterprise.

The government presented evidence that Defendants were humiliated after a member of a rival gang chased them through the Fairlane Town Center.  This incident was captured on video and posted on social media.  Antoine Woods was then directed via text message from a fellow HNIC member to "fuck [him] up."  (Gov. Exh. 41.25.)

After the shootings, Antoine Woods bragged about them on social media and in rap songs with references to HNIC. This evidence was sufficient for the jury to conclude that the Defendant Antoine Woods committed the violent crimes at issue to maintain or increase his position in the enterprise. *See United States v. Gills*, 702 F. App'x 367, 376-77 (6th Cir. 2017) (sufficient evidence supporting purpose element of VICAR count where gang "expected its members to retaliate violently when someone disrespected or threatened a fellow member" and defendant bragged about shooting afterward). In sum, the evidence was sufficient to support all the common VICAR elements.

### 2. Sufficient Evidence on December 6, 2015 Shooting

A summary of only some of the relevant evidence presented at trial demonstrates that there was sufficient evidence from which the jury could have concluded that Defendant Antoine Woods participated in the shooting that took place on December 6, 2015 at the Kind of Diamonds strip club.

First, there was evidence placing Antoine Woods at the scene. More specifically, a member of the FBI's Cellular Analysis Survey Team testified that two cell phone numbers associated with Antoine Woods utilized cell tower cites around the King of Diamonds shortly before and after the shooting. (Dkt. 219, PgID 2333-36; *see also* Gov. Exhs. 62.1, 62.3.) Moreover, three days after the shooting, a HNIC associate named "Rara" sent a text message to Rhymes referencing a shooting. A cell phone associated with "Rara" was also near the King of Diamonds on the night of the shooting.

An individual named Eric Green testified that he saw two individuals shooting toward the King of Diamonds on the night of the shooting and that he returned fire. (Dkt. 217, PgID 2029-30.) This was further corroborated by the surveillance video,

which showed two figures emerge from a vehicle, run toward the club just before the shooting, and then flee. There were also bullet casings recovered from the scene and testimony supporting an inference that bullets from three different calibers were fired that night.

An individual named Michael Yousif provided testimony that he was robbed of a .40 caliber handgun with a unique red laser attachment approximately a week prior to the shooting. (Dkt. 203, PgID 1706-26.) There was also cell phone evidence reflecting that Antoine Woods had possession of an identical looking gun that same day. Moreover, a valet driver at the King of Diamonds testified that he saw a "red beam" coming from south of the club (the same area from which the bullet casings were recovered) prior to the shooting. And one of Antoine Woods' rap songs specifically referenced this red beam.

Finally, HNIC member and co-conspirator Rhymes testified at length as to how both he and Antoine Woods committed the shooting at the King of Diamonds shooting. And while Antoine Woods argues that his testimony was incredible, there was sufficient corroborating evidence from which to conclude that Woods committed attempted murder and assault with a firearm the night of the December 6, 2015 shooting or, alternatively, that he aided and abetted the commission of these crimes.

### 3.    Sufficient Evidence on December 20, 2015 Shooting

Similar to the December 6, 2015 shooting, a review of only some of the relevant evidence presented at trial demonstrates that the evidence was sufficient to establish that Defendant Antoine Woods participated in the December 20, 2015 shooting at 557 Alger Street.

First, there was the cell tower evidence placing Antoine Woods at the scene of the shooting. More specifically, a phone associated with Woods traveled from the Oak Park area toward the crime scene prior to the shooting, connected to a tower just west of the crime scene shortly before the shooting, and travelled back to Oak Park after the shooting. Moreover, Antoine Woods received text messages in the weeks preceding the shooting from Austin Woods, providing 557 Alger Street as the address of their rival's grandmother's home. (Gov. Exh. 41.44.)

In addition, the jury heard testimony regarding the casings recovered from the scene of the shooting and how they matched the casings retrieved from other shooting scenes. And, finally, Antoine Woods made comments on his Instragram account and in his rap videos, which could be construed as admissions of his involvement in the shooting, such as "boy don't make me wake grandma up again." And while Rhymes did not testify that he was present during this shooting, he did testify that he and Woods had previously gone to 557 Alger Street to verify that it was their target's grandmother's home and that Woods had told him that he had shot at the house. In sum, there was sufficient evidence establishing Antoine Woods committed attempted murder and assault with a firearm the night of the December 20, 2015 shooting or, alternatively, that he aided and abetted the commission of these crimes.

### 4. Sufficient Evidence a Firearm Was Discharged

Defendant Antoine Woods argues the evidence was insufficient to establish that a firearm was discharged during the commission of the VICAR offenses, which serve as the predicate crimes for his convictions under § 924(c) (Counts 5 and 11). "Although § 924(c) requires proof that the gun is real, the government's proof need not reach a level

of scientific certainty." *United States v. Willis*, 232 F. App'x 527, 537 (6th Cir. 2007) (noting that "descriptive lay opinion testimony" is sufficient to support a conviction under § 924(c)) (internal quotation marks and citations omitted).  Here, an eyewitness, who was present during both shootings, testified that he saw the discharge of firearms during the December 6, 2015 shooting and heard gunshots and saw bullets piecing the walls during the December 20, 2015 shooting.  For the December 6, 2015 shooting, there was also photographic evidence of the bullet holes in a car that was parked at the club's entrance, video evidence of the flashes from the area where the shooters were located, and bullet fragments and discharged casings retrieved from the scene.  For the December 20, 2015 shooting, discharged casings were also retrieved from the scene.  A firearms expert witness testified regarding how the recovered casings from both shootings were fired from the same firearms that had fired casings recovered from other shooting scenes.  This evidence was sufficient to establish that a firearm had been discharged during both shootings for purposes of Defendants' § 924(c) convictions.

**C. Sufficient Evidence for Guilty Verdict as to Defendant Austin Woods on Count 11 based upon a *Pinkerton* Theory of Liability**[3]

Defendant Austin Woods seeks acquittal on his conviction for using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of § 924(c) (Count 11).  He argues that the jury may have improperly predicated this conviction on his conspiracy to commit murder conviction (Count 1) due to the

_____

[3] To the extent these issues relate to Antoine Woods, the Court's analysis applies to him as well.  The Court notes, however, that Austin Woods' liability was based solely on *Pinkerton*, while Antoine Woods was charged as a principal and aiding and abetting and *Pinkerton* were alternate theories.

government's reliance on a *Pinkerton* theory of liability, and that conspiracy is no longer a valid crime of violence pursuant to the Supreme Court case of *United States v. Davis*, 139 S. Ct. 2319 (2019). The government argues that Defendant's arguments have no merit, noting that they are based in large part on a conflation of 1) the crimes of violence which serve as the predicate offenses for Count 11 and 2) the murder conspiracy to which Austin Woods was a member of and which gave rise to his *Pinkerton* liability for Count 11.

Prior to trial, Defendants moved to dismiss the four § 924(c) counts charged in the indictment (Counts 5, 8, 11, and 14), arguing that the "residual clause" definition of a "crime of violence" was unconstitutionally vague in light of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which invalidated a similarly worded clause in another statute. The Court noted, however, that under § 924(c), there are two definitions for a "crime of violence"— § 924(c)(3)(A) contains the "elements clause" definition and § 924(c)(3)(B) contains the "residual clause" definition. *See United States v. Woods*, 336 F. Supp. 3d 817, 822 (E.D. Mich. 2018). While there was a question as to the constitutionality of the residual clause, the elements clause remained undisputedly intact. In this case, as set forth in the second superseding indictment, the predicate crimes of violence for Count 11 are attempted murder in aid of racketeering (Count 9) and assault with a dangerous weapon in aid of racketeering (Count 10).[4] (Dkt. 126, PgID 574.) The Court found that both of these predicate offenses constitute crimes of violence under the elements

_____

[4] Similarly, the predicate crimes for Defendant Antoine Woods' § 924(c) conviction set forth in Count 5 are attempted murder in aid of racketeering (Count 3) and assault with a dangerous weapon in aid of racketeering (Count 4). (Dkt. 126, PgID 569-70.)

clause, and thus denied Defendants' motion to dismiss. *See Woods*, 336 F. Supp. 3d at 824-25. The Supreme Court's ruling in *Davis*, 139 S. Ct. at 2336, explicitly finding § 924(c)(3)(B) unconstitutionally vague, does not alter this analysis in any way. Moreover, the Sixth Circuit has recently affirmed this Court's finding that assault with a dangerous weapon in aid of racketeering is a crime of violence under the elements clause. *See Manners v. United States*, 947 F.3d 377, 382 (6th Cir. 2020). And while Defendants cite to the case of *United States v. Jones*, 935 F.3d 266, 274 (5th Cir. 2019), there, the § 924(c) offense was predicated upon two offenses, one of which was no longer a valid crime of violence post-*Davis*, and it was unclear which predicate the jury had relied upon. Here, both of the predicate VICAR offenses constitute crimes of violence under the elements clause.

Under *Pinkerton v. United States*, 328 U.S. 640, 645-48 (1946), a conspirator may be convicted of a substantive offense that other conspirators commit during and in furtherance of a conspiracy. This includes a § 924(c) offense. *See United States v. Myers*, 102 F.3d 227, 238 (6th Cir. 1996). And while Austin Woods was not charged with the predicate offenses (only Antoine Woods was), this is of no consequence. *See United States v. Smith*, 182 F.3d 452, 457 (6th Cir. 1999) (Section 924(c) "requires only that the defendant have committed a violent crime *for which he may be prosecuted* in federal court. It does not even require that the crime be charged; *a fortiori*, it does not require that he be convicted."); *see also Johnson v. United States*, 779 F.3d 125, 129 (2d Cir. 2015) ("Every circuit court to have considered the issue has concluded that § 924(c) does not require the defendant to be convicted (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was,

in fact, committed.").  What matters is that the jury was properly instructed on the government's burden to establish Austin Woods' liability under *Pinkerton* and that the evidence was sufficient to meet that burden.

To prove a defendant guilty of a substantive offense under *Pinkerton*, the government must prove 1) that the defendant was a member of the conspiracy; 2) that after he joined the conspiracy, and while he was still a member of it, one or more of the other members committed the substantive offense in question; 3) that this substantive offense was committed to help advance the conspiracy; and 4) that this substantive offense was within the reasonably foreseeable scope of the unlawful project.  *See Pinkerton*, 328 U.S. at 645-48;  *United States v. Etheridge*, 424 F.2d 951, 965 (6th Cir. 1970).

Here, the jury was properly instructed on the *Pinkerton* theory of liability.  More specifically, the jury was instructed that to find Austin Woods liable on a *Pinkerton* theory, the government needed to prove, in relevant part, that "one or more of the other members [of the conspiracy] committed the specific firearm crime under consideration," which was the § 924(c) conviction in Count 11.  (Dkt. 247-1, PgID 3880.)  In turn, the instructions included all of the elements needed to prove Antoine Woods' use and carry of a firearm "during and in relation to one or both of the crimes of violence charged in the indictment that are under consideration . . . [t]hat is, for Count Eleven, the crimes of violence charged in Counts Nine and/or Ten."  (*Id.* at PgID 3874.)

Moreover, the evidence was sufficient to establish all of these elements.  As discussed above, there was sufficient evidence from which the jury could have concluded that a member of the conspiracy, namely Antoine Woods, committed the

substantive offense in question.  And the volume and frequency of the communications between the members of the conspiracy support an inference that Antoine Woods committed the offense while he and Austin Woods were members of that conspiracy.

There was also sufficient evidence from which the jury could have concluded that Antoine Woods' commission of the substantive offense was committed to help advance the murder conspiracy and that it was within the conspiracy's reasonably foreseeable scope.  Only a few weeks prior to the shooting, Austin Woods sent Antoine Woods and Rhymes a link to a video that provided 557 Alger as the address for their rival along with a message to Antoine stating "Go check that YouTube video for his grandmother address / That's where he hiding I guarantee" and a message to Rhymes stating, "Write down that address that's where he gone be / Grandma house."  (Gov. Exhs. 40.16, 41.43.)  Thus, the evidence was sufficient to support Defendant Austin Woods' conviction based upon a *Pinkerton* theory of liability.

Finally, the Court addresses Defendant's argument that the evidence in this case combined with the *Pinkerton* instruction amounted to a constructive amendment of the charge in the indictment.  A constructive amendment occurs "when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment."  *See United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007) (internal quotation marks and citation omitted).  However, Defendant does not identify any trial evidence proving facts that differed from those alleged in the indictment.  Moreover, the Sixth Circuit has held that a *Pinkerton* instruction for a

substantive offense does not result in a constructive amendment.[5]  *See id.* at 527-28;

*see also United States v. Ashley*, 606 F.3d 135, 143 (4th Cir. 2010) (holding "a district

court does not constructively amend an indictment by giving a *Pinkerton* instruction

when *Pinkerton* liability has not been charged" in the indictment).  In sum, Defendants'

arguments regarding their § 924(c) convictions have no merit.

### D.  Verdict Form was Proper

Defendant Antoine Woods argues that because the Court did not use a special

verdict form, it is unclear whether the jury's guilty verdicts were unanimous as to each

element of his convictions.[6]  Defendant first notes that the jury was instructed that it

could find him guilty of the attempted murder and assault with a dangerous weapon

(VICAR) offenses as a principal or as an aider and abettor and that it could find him

guilty of violating § 924(c) as a principal, aider and abettor, or under a *Pinkerton* theory

of liability.  However, these alternate theories do not necessitate a special verdict form.

*See United States v. Perry*, 401 F. App'x 56, 62 (6th Cir. 2010) ("Since the criminal

liability for principals and aiders and abettors is identical, there is no requirement that a

jury unanimously find each was either a principal or an aider and abettor.") (citations

omitted).  Defendant also argues that a special jury verdict form was needed to clarify

which predicate offense the jury based his § 924(c) convictions upon.  However, as

noted above, the jury was instructed that the § 924(c) charges were predicated on the

---

[5] In that case, the Sixth Circuit also held that a district court may properly provide a *Pinkerton* instruction regarding a substantive offense, even when the defendant is not charged with the offense of conspiracy.  *Budd*, 496 F.3d at 528.  Here, not only were Defendants charged with the offense of conspiracy, but also the jury returned guilty verdicts as to this charge.  In fact, Defendants do not challenge the sufficiency of the evidence supporting their conspiracy convictions.

[6] Defendants did not raise an objection to the jury verdict form during trial.

VICAR offenses, not the conspiracy charge in Count 1. *Cf. United States v. Vasquez*, 672 F. App'x 56, 61 (2d Cir. 2016) (affirming a § 924(c) conviction using a general verdict form despite multiple predicates because the record made it clear that the conviction was supported by a valid drug trafficking predicate). Moreover, each § 924(c) conviction was based upon two VICAR offenses that stemmed from the same shooting, and the jury found Antoine Woods guilty of both of these underlying offenses for each conviction. Thus, the lack of a special verdict form in this case does not raise any unanimity concerns.

### E. Sufficient Evidence for Guilty Verdicts as to Defendant Antoine Woods on Counts 16, 17

Defendant Antoine Woods seeks a judgment of acquittal on his conspiracy to commit obstruction of justice and obstruction of justice convictions (Counts 16, 17), but fails to make any argument regarding any deficiencies in the trial evidence. Regardless, the Court finds there was sufficient evidence to support these convictions.

To sustain a conviction for obstruction of justice, the government was required to prove "1) that there was a pending judicial proceeding, 2) that the defendant knew this proceeding was pending, and 3) that the defendant then corruptly endeavored to influence, obstruct, or impede the due administration of justice." *United States v. Monus*, 128 F.3d 376, 387 (6th Cir. 1997).

Here, the testimony of Case Agent Rummel and co-conspirator Rhymes established that there was a pending judicial proceeding, namely this case, during March and April of 2018 (the time of the charged obstruction conduct) and that Defendant Antoine Woods knew this proceeding was pending. (Dkt. 221, PgID 2572; dkt. 223, PgID 2936.) Moreover, there was several pieces of evidence from which the

jury could conclude that Antoine Woods endeavored to influence, obstruct, or impede the appearance and testimony of Rhymes. For example, Rhymes testified that Antoine Woods told him to plead the Fifth when they were both being held in the courthouse lock-up prior to a status conference. (Dkt. 221, PgID 2572-74.) He also testified that later, while being held at the same detention facility as Woods, another inmate, co-defendant Theodore Chandler, delivered an affidavit and a cover note to his cell. (*Id.* at PgID 2580-81.) The note stated in relevant part, "sign this and we will just act like shit never happened," and the affidavit stated that the signer "ha[s] no knowledge nor never witnessed, participated, or conspired with Antoine Woods, Austin Woods, or [another co-conspirator]" to commit "any state or federal crimes" and that "[a]ny statements made prior to this date would be false and made under duress." (Gov. Exhs. 100.1-3.) Antoine Woods stipulated that the handwriting on the cover note was his. (Dkt. 221, PgID 2586.) Woods also sent emails to coordinate the delivery of the affidavit and note, stating in part, "I need him to sign this affidavit for this case for me and [Austin]." (Gov. Exh. 104.22.) This evidence was sufficient to support Defendant Antoine Woods' obstruction of justice conviction.

For the conspiracy to commit obstruction of justice count, the jury was instructed that the government was required to prove that 1) "the defendant and at least one other person conspired, or agreed, to commit the crime of obstruction of justice;" 2) "that the defendant knowingly and voluntarily joined the conspiracy;" and 3) "that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy." (*See* dkt. 247-1, PgID 3884.) The evidence discussed above similarly supports this conviction. Moreover, Rhymes testified that

Chandler later entered his cell and threatened him, telling him to sign the affidavit. (Dkt. 221, PgID 2592-93.) Thus, there was sufficient evidence from which the jury could conclude that Defendant Antoine Woods engaged in a conspiracy to obstruct justice.

### F.  Defendant Antoine Woods' Social Media Posts were Properly Admitted

Defendant Antoine Woods argues that the government did not properly authenticate his social media accounts as belonging to him.  The government responds by arguing that the government produced ample evidence linking Defendant to the social media accounts, "painstakingly reviewing key identifiers found in the social media accounts themselves and highlighting corroborating identifiers elsewhere." (Dkt. 283, PgID 4106.)

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  "Authentication is a relatively low hurdle, and may be proved through a variety of methods, including circumstantial evidence."  *United States v. Quintana*, 763 F. App'x 422, 426 (6th Cir. 2019) (internal quotation marks and citations omitted).  A court's decision to admit particular evidence as properly authenticated does not preclude the defendant "from challenging its genuineness before the jury."  *United States v. Jones*, 107 F.3d 1147, 1150 n.1 (6th Cir. 1997).

Here, for Defendant Antoine Woods' Instagram account (pesh_tarentino), the government introduced evidence that the account used the email address "HNICPesh@gmail.com," that the same email address and account name appeared in the user accounts on Antoine Woods' phone, and that Antoine Woods used the moniker

"Pesh." (Dkt. 200, PgID 1335-36, 1357-61.) The government also noted Antoine

Woods in the profile picture and a picture posted on his birthday stating "HNIC Pesh

4642 happy birthday." For his twitter account, the government presented evidence that

the account used the email address "freshpesh88@gmail.com," which matches Antoine

Woods' 1988 birth year and his "Pesh" moniker, and had numerous pictures of

Defendant. (Dkt. 231, PgID 3515-17, 3531.) This evidence was sufficient to support

the authentication of Defendant's social media accounts. *Compare United States v.*

*Quintana*, 763 F. App'x 422, 427 (6th Cir. 2019) (rejecting an authenticity challenge to

the district court's admission of records from the defendant's Facebook page where

there was "an account in defendant's name, an email address with his name and

moniker, a location linked to defendant, dates that correspond to witness testimony, and

a picture of defendant") *with United States v. Vayner*, 769 F.3d 125, 132-33 (2d Cir.

2014) (holding the district court's admission of what the government alleged was the

defendant's profile page from a Russian social networking site was error due to a lack of

proper authentication where there no evidence in the record to link the page to the

defendant "[o]ther than the page itself"). Thus, there was no error in the admission of

Defendant's social media posts.

### G. Rhymes' Testimony Does Not Mandate a New Trial

Both Defendants raise issues relating to the testimony of their co-conspirator,

Donovann Rhymes. Defendant Antoine Woods argues his due process rights were

violated, because Rhymes provided false testimony. To establish a denial of due

process based on the use of false testimony, however, a defendant must show "(1) the

statement was actually false; (2) the statement was material, and (3) the prosecution

knew it was false." *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (internal quotation marks and citation omitted). "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.*

Here, Defendant has not provided any evidence that Rhymes' testimony was actually false. Defendant points to Rhymes' statement during cross-examination that he "possibly" told law enforcement that he, and not Woods, had committed the December 20, 2015 shooting. (*See* dkt. 221, PgID 2625.) Indeed, Rhymes himself admitted during direct examination that he was not always truthful in his prior meetings with the government. (*Id.* at 2571.) However, any inconsistencies between Rhymes' testimony and his prior statements are not sufficient on their own to establish he committed perjury or the prosecution knew of the alleged perjury. *See Coe*, 161 F.3d at 343. Moreover, Defense counsel had the opportunity to bring the inconsistent testimony to the attention of the jury during both cross-examination and closing argument. *See United States v. Ward*, 190 F.3d 483, 491 (6th Cir. 1999). Thus, there was no due process violation.

Defendant Austin Woods asserts that the Court's denial of Defendants' motion to strike Rhymes' direct testimony after he invoked his Fifth Amendment right against self-incrimination during cross-examination mandates a new trial. (Dkt. 209.) While a witness's invocation of the Fifth Amendment may have implications on a defendant's Sixth Amendment right to confrontation, the refusal of a witness to submit to cross-examination on "collateral maters" or to provide "cumulative testimony regarding credibility" does not require that any testimony be stricken. *See United States v. Stephens*, 492 F.2d 1367, 1375 (6th Cir. 1974); *see also United States v. Garrett*, 542 F.2d 23, 26 (6th Cir. 1976) (emphasizing the distinction "between general credibility and

answers which might possibly establish untruthfulness with respect to the specific events of the crime charged").

Here, while Rhymes initially invoked his Fifth Amendment privilege during three lines of questioning, he ultimately did answer the questions posed to him on two of those issues. And after considering the parties' briefs and hearing oral argument, the Court found that the third line of questioning—regarding an armed robbery for which charges were later dismissed—did not warrant any testimony be stricken because this was an issue that was "collateral at best and cumulative with respect to credibility." (Dkt. 225, PgID 3171; dkt. 211.) Thus, the Court properly denied Defendants' motion to strike Rhymes' direct testimony.

### H.    Disclosure of Bullet Fragment

Defendant Antoine Woods argues that the government violated Federal Rule of Criminal Procedure 16(a)(1) by its delayed disclosure of a bullet fragment that was introduced into evidence as Government Exhibit 71.14. The government responds by noting that the police report reflecting the recovery of a bullet fragment from the scene of the December 6, 2015 shooting was first produced seventeen months before trial and was also provided to Defendants' discovery coordinator approximately one year before trial. And while the government acknowledges that it did not conduct an expert analysis of the bullet fragment until much closer to trial, Defendants were provided the bullet fragment and other casings when they requested their own firearm examiner have an opportunity to review this evidence. Moreover, any delay did not prejudice Defendant, who did not object to the fragment's introduction into evidence and did not challenge the government's expert's conclusions about the fragment. (*See* dkt. 225, PgID 3182-84.)

Thus, Defendant's argument regarding the timeliness of the disclosure of the bullet fragment has no merit.

## I.    No Constructive Amendment Occurred

Defendant Antoine Woods argues that the indictment was constructively amended for two reasons.  First, he notes that Count 4 of the indictment, charging him with assault with a dangerous weapon in aid of racketeering, listed three victims, while the jury instructions only included two of those victims.  Moreover, the indictment charged the HNIC enterprise with engaging in activities that affected "interstate and foreign commerce," but the jury was instructed that the government must prove the enterprise's affect only on "interstate commerce."

However, "[i]t is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively.  Upon the trial the government may prove and the trial judge may instruct in the disjunctive form used in the statute."  *United States v. Murph*, 707 F.2d 895, 896-97 (6th Cir. 1983) (citation omitted).  Here, for the VICAR offenses, the government was required to prove that the enterprise was engaged in activities that affected "interstate *or* foreign commerce."  *See* § 1959(b)(2).  Thus, the government's reliance only on "interstate commerce" was permissible.  Similarly, the fact that the government did not present evidence on one of the victims named in the indictment does not impact the validity of the conviction as to the other two victims.  In sum, there was no constructive amendment.

## J.    Ballistics Evidence

Defendant Antoine Woods argues that the government failed to disclose exculpatory ballistics evidence in violation of its *Brady* obligations.  Defendant appears

to base this argument on speculation, noting that ballistics evidence was presented to the jury for all the shootings except the December 7, 2015 shooting that took place at a hair salon.  Defendant argues that the evidence would have shown that the same firearm was used in both the December 7, 2015 and December 20, 2015 shootings.  However, the government responds by noting that while one of the casings recovered from the December 7, 2015 shooting was submitted for entry into the National Ballistic Information Network, the system did not identify any potential matches that would warrant further comparison analysis.  Thus, the government did not fail to disclose exculpatory ballistics evidence, because no such evidence exists.

### K.    Prejudicial Statement Does Not Warrant a New Trial

Defendant Austin Woods asserts that a prejudicial statement made by a government witness in the presence of the jury warrants a new trial in this case.  The government argues that the jury instructions given by the Court sufficiently protected against any juror bias resulting from the statement.

In response to questions about the beginning of the investigation into HNIC as a part of the government's case-in-chief, Case Agent Rummel stated that he had been investigating various HNIC members as "either witnesses or party to some violent crimes, including a drive-by shooting of a residence in which a three-month old was killed."  (Dkt. 200, PgID 1326-27.)  Counsel for all parties approached the bench and the defense requested a mistrial, arguing the statement was prejudicial.  The Court agreed the statement was prejudicial but held it did not warrant a mistrial.  (*Id.* at PgID 1327-28.)  The Court also instructed the witness not to volunteer detailed information about prior or contemporaneous investigations "if the underlying allegations involve serious

crimes such as the murder of a three-month old." (*Id.* at PgID 1329.) Defense counsel moved for a mistrial on the same basis again the next morning. (*See* dkt. 228, PgID 3337.) The Court denied the motion but indicated that it would give the jury cautionary instructions if the parties so agreed. The parties ultimately agreed upon the following language:

> Earlier in this trial on May 21, 2019 you heard testimony from Special Agent Matthew Rummel that law enforcement investigated whether various members of HNIC were either witnesses or parties to a drive-by shooting of a residence that resulted in the death of a three-month-old baby, child, in 2012 or 2013. The government and defendants have agreed or stipulated to the following fact: Upon further investigation, law enforcement ultimately determined that neither HNIC nor defendant Antoine Woods nor defendant Austin Woods were involved in the drive-by shooting. Accordingly, you are instructed to completely disregard Agent Rummel's testimony about that 2012 or 2013 drive-by shooting. Do not discuss it or consider it in your deliberations. You cannot consider it in any way against either of the defendants. Do not let it influence your verdict in any way.

(Dkt. 217, PgID 1892-93.) Despite these instructions being read by the Court to the jury on May 29, 2019, Defendant Austin Woods now argues that they did not cure the prejudicial nature of the witness's statement.

As a general matter, "[b]ackground information that explains how law enforcement came to be involved with a particular defendant" is admissible. *See United States v. Caver*, 470 F.3d 220, 239 (6th Cir. 2006). Here, in response to a line of questioning regarding how he came to be involved with Defendants, the case agent made the prejudicial statement at issue. In cases where the Sixth Circuit has considered whether particular prejudicial testimony warrants a new trial, it has considered a number of factors, including whether curative instructions were given, "whether the prejudicial statement was an isolated incident or comprised a significant part of the testimony," and "whether the government acted in bad faith or deliberately

injected the comment." *See United States v. Munda*, No. 92-5588, 1993 U.S. App. LEXIS 11130, at \*5 (6th Cir. May 7, 1993) (citing cases); *see also United States v. Reesor*, 10 F. App'x 297, 304 (6th Cir. 2001) ("In order for a mistrial to be warranted, the admitted evidence on which it is based must render the trial unfair.").

Here, the prejudicial testimony was only one statement and there is no evidence that the government acted in bad faith or deliberately injected the testimony. (*See* dkt. 228, PgID 3336.) Moreover, the jury was not only instructed to disregard the statement, but was also explicitly informed that the investigation revealed that both Defendants were not involved in the drive-by shooting. Thus, the instructions were sufficient to cure any prejudice resulting from the jury hearing the statement made by the witness, and the Court properly denied the motion for a mistrial. *See United States v. Martinez*, 430 F.3d 317, 336-37 (6th Cir. 2005) (finding no abuse of discretion in the denial of a motion for mistrial due to a remark regarding the defendant's prior arrests because it was unsolicited, the government's line of questioning was reasonable, the jury was instructed to disregard the testimony, and the statement was only a small part of the evidence); *Munda*, 1993 U.S. App. LEXIS 11130, at \*3-5 (finding no abuse of discretion in the denial of a mistrial due to testimony regarding the defendant previously serving time in prison because "it was only one statement, never mentioned again by either party, unsolicited, and cured by fully instructing the jury"). In sum, the isolated statement made by the government witness did not render the trial unfair.

### L.    Video Evidence was Properly Admitted

Defendant Austin Woods argues that the Court's admission of certain video evidence constituted error. In the video at issue, Austin Woods, in a YouTube interview,

introduces himself as "HNIC Ken," states that he represents HNIC, and describes how he directed "goons" to "humble" a particular individual who had shown too much disrespect. (*See* dkt. 184-1, PgID 1114-17.) Prior to trial, Defendants filed a motion in limine, seeking to preclude the government's introduction of certain rap videos, song lyrics, and other social media evidence, including this video. (Dkt. 184.) Defendants argued that this evidence should be excluded because it is artistic expression entitled to First Amendment protection, and its probative value is outweighed by the risk of unfair prejudice. (*Id.*) The government argued that the evidence was admissible because it is relevant to the existence of the HNIC enterprise, the purpose of the enterprise, and Defendant's role in that enterprise. (Dkt. 197.) After considering the parties' briefs and hearing oral argument, the Court denied Defendants' motion but ordered the government to alert the Court prior to the admission of any song lyrics or video clips. (Dkt. 199.) After reviewing the video clips in camera, the Court held that they were admissible. (Dkt. 231, PgID 3527.) Austin Woods offers no reason for the Court to reconsider its previous ruling. In fact, Defendant himself offered clips from the same video at trial. (*See* dkt. 224, PgID 3059-61.) The admission of the video evidence did not constitute error.

### M. Mandatory Sentencing Provisions are Not Unconstitutional

Defendant Austin Woods asserts that the mandatory sentencing provisions of § 924(c) are unconstitutional as cruel and unusual under the Eighth Amendment. Because Austin Woods had not yet been sentenced, however, this issue is not ripe for review. Moreover, the Sixth Circuit has previously rejected an Eighth Amendment claim to the consecutive-sentence requirement in § 924(c). *See United States v. Watkins*,

509 F.3d 277, 282-83 (6th Cir. 2007) (noting "the Supreme Court has held that life sentences for even nonviolent offenses are constitutional"); *see also United States v. Ellis*, 483 F. App'x 940, 942 (6th Cir. 2012) (rejecting an Eighth Amendment claim to the mandatory minimum sentence provisions in 21 U.S.C. § 841). In sum, the sentencing requirements in § 924(c) are not unconstitutional.

### III.     Conclusion

For the foregoing reasons, Defendants Antoine Woods' and Austin Woods' Rule 29 and Rule 33 motions are DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 2, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 2, 2020, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager